For the reasons indicated, the decree under review will be affirmed.

*For affirmance*—The Chief-Justice, Trenchard, Parker, Black, Katzenbach, Campbell, Lloyd, White, Van Buskirk, McGlennon, Kays, Hetfield, Dear, JJ. 13.

*For reversal*—None.

---

Model Plan Agency, appellant,

*v.*

Israel Diamond et al., respondents.

[Decided October 17th, 1927.]

1. Where there is a variance between a point of distance and a monument as contained in a description of land in a deed, the monument controls.

2. Where a complainant vendee under a contract of sale of lands seeks to rescind and impress a lien on the lands for the down money on the ground that vendor's title rests in adverse possession, the burden of proving such title is on the complainant.

3. After title to lands has become absolute by sixty years' possession, or by thirty years' possession under a conveyance from a person in possession supposed to have a legal title, under sections 28 and 29 (*3 Comp. Stat. p. 3172*), such title cannot be said to rest in "adverse possession" within the meaning of those words as used in a contract of sale specifying that title shall "not be derived from adverse possession."

4. Sections 28 and 29 (*3 Comp. Stat. p. 3172*) are entirely independent of each other, are not conflicting, and neither modifies the other. The rights conferred by both or either are available to suitors.

5. The purpose of the provision in a contract of sale that the title shall "not be derived from adverse possession" is to insure the vendee a good title not subject to successful attack in the courts, and not to afford an excuse for non-performance.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Berry, who filed the following opinion:

"This bill seeks a rescission of a contract for sale of land and the impression of a lien of the $2,500 down money on the land the subject of the sale. The complainant is the vendee and the defendant the vendor. The complainant alleges that it was ready and willing on the date fixed for performance to accept title under the terms of the contract and pay the purchase price as therein provided, but that on that day, and until the time of the filing of the bill of complainant, the defendant was unable to deliver title to the property in question in accordance with the terms of the contract, and therefore complainant refused to perform. The sole excuse for non-performance by the complainant is its contention that the defendant's title is based on adverse possession, and it is on this ground that complainant seeks rescission. The contract contains this clause:

" 'It is expressly understood and agreed that the title to the land and premises hereby agreed to be conveyed is not derived from any Martin act proceedings or any act for the sale of land for non-payment of municipal taxes or assessments, or *adverse possession.*'

"Record title for at least a large part of the lands described in the contract runs back as far as October 10th, 1836. Some discrepancies with respect to the location of street lines approximately sixty years ago resulted in some question as to the record title of a very small portion of the lands in question. Most of the evidence submitted to the court on the final hearing was in the form of written stipulations, and a part of one of the stipulations is as follows:

" 'That the said Thomas Degnan was a *bona fide* purchaser of said lands from the grantors named in said deeds and as such purchaser occupied and held the parcel of land described in the contract of sale dated January 12th, 1926; that he entered upon and continued in possession of said lands uninterrupedly until he conveyed same to Emanuel Beitman by deed dated and recorded January 23d, 1907.'

"Degnan is one of defendant's predecessors in title. The contract referred to is the one here involved. No question is

raised as to the title since the Beitman deed of 1907. This stipulation renders it unnecessary for me to consider any question of discrepancies in street lines as now and formerly existing. Aside from this, however, the descriptions in the early deeds ran to monuments such as other property lines and street lines, and the rule of law is that where there is a variance between a point of distance and a monument, the monument controls.

"From the stipulation above recited, it conclusively appears that the defendant and his predecessors in title have been in actual and undisputed possession of the lands which were the subject of the contract for at least sixty-three years, and that that possession was taken by a *bona fide* purchaser under a grant which is of record. Record title to the lands in question is therefore complete from 1867 to date. The provisions of sections 28 and 29 (*3 Comp. Stat. p. 3172*) are pertinent to this inquiry. These sections as they appear in the compiled statutes were originally enacted in 1787 and were continued in that form through the various revisions, including that of 1877, where they were included in an act entitled "An act for the limitation of suits respecting title to lands." Section 1 of the act of 1787, now section 28 of the revision, reads as follows:

" 'That sixty years' actual possession of any lands, tenements or other real estate, *uninterruptedly continued by occupancy, descent, conveyance or otherwise, in whatever way or manner such possession might have commenced, or have been continued, shall vest a full and complete right and title in every actual possessor or occupier of such lands, tenements, or other real estate,* and shall be a good and sufficient bar to all claims that may be made, or actions commenced by any person or persons whatever, for the recovery of any such lands, tenements, or other real estate.'

"Section 2 of the same act, now section 29 of the revision, so far as pertinent to this issue, reads as follows:

" 'That thirty years' actual possession of any lands, tenements or other real estate, uninterruptedly continued as aforesaid, wherever such possession commenced, or is founded upon a proprietary right duly laid thereon, and recorded in the surveyor-general's office of the division in which such location was made, or in the secretary's office,

agreeably to law, *or wherever such possession was obtained by a fair bona fide purchase of such lands, tenements or other real estate, of any person or persons whatever, in possession, and supposed to have a legal right and title thereto, or* of the agent or agents of such person or persons, *shall be a good and sufficient bar to all prior locations, rights, titles, conveyances, or claims whatever, not followed by actual possession as aforesaid, and shall vest an absolute right and title in the actual possessor and occupier of all such lands, tenements, or other real estate;* \* \* \*.'

"Section 28 of the revision was amended in 1922 (see *Cum. Supp. to Comp. Stat. p. 1816*) to read as follows:

" 'Thirty years' actual possession of any lands, tenements, or other real estate, excepting woodlands or uncultivated tracts, and that sixty years' actual possession of any woodlands or uncultivated tracts, uninterruptedly continued by occupancy, descent, conveyance or otherwise, in whatever way or manner such possession might have commenced, or have been continued, shall vest a full and complete right and title in every actual possessor or occupier of such lands, tenements, or other real estate, and shall be a good and sufficient bar to all claims that may be made, or actions commenced by any person or persons whatsoever, for the recovery of any such lands, tenements or other real estate.'

"It therefore conclusively appears that in view of the provisions of that statute the defendant's title is good and marketable and, indeed, no question as to the validity of the title or its marketability is raised by the complainant. As already suggested, complainant's whole case is based upon his assertion that defendant's title is based on adverse possession. This being so, the burden of proof of the fact so asserted is on the complainant. He complains that the defendant offers no proof of adverse possession and that in the stipulation prepared by defendant's counsel the fact of adverse possession, as such, was not declared. The burden of proof rests upon the complainant. He should not expect the defendant to prove his case for him, and it was probably due to no oversight on the part of defendant's counsel that adverse possession was not stipulated. Rather, it would appear that this is the result of design. It will be noted that under section 1 of the Revision of 1877, sixty years' actual possession uninterruptedly continued, &c., in whatever manner such posses-

sion might have commenced, confers a perfect title. This has now been modified to provide for thirty years' possession except as to woodland and uncultivated tracts with respect to which sixty years' possession is still necessary; but under section 2 of that act thirty years' actual possession 'wherever such possession was obtained by a fair, *bona fide* purchase of such lands * * * of any person * * * supposed to have a legal right and title thereto,' confers a perfect title. The stipulation above quoted, together with other evidence submitted, brings this case directly within this provision of section 2. Such a title is not necessarily based upon adverse possession. It might very well have been based upon a grant to the person 'in possession and supposed to have a legal right and title' and such grant may have been lost. These two sections of the statute of limitations are entirely independent of each other and neither conflicts with nor modifies the other. The defendant may avail himself of the rights conferred by either section or by both. *Spottiswoode* v. *Morris and Essex Railroad Co., 61 N. J. Law 322.* The defendant acquired title to the premises in question in 1922 from a grantor whose title was based not upon adverse possession but upon an absolute title which had accrued to prior grantors under the statute many years before. Complainant requests a construction of the words 'adverse possession' as used in the contract of sale, but I do not feel called upon to construe those words further than to say that they do not refer to or contemplate any such situation as is presented by the facts now before the court. I need only say that the defendant's title does not rest in adverse possession within the meaning of the words as used in the contract. If it can be said that defendant's title rests in adverse possession, however remotely, I may say that I am of the opinion that the words 'adverse possession' as used in this contract mean a more *immediate* adverse possession than that disclosed by the evidence in this cause. If these words were given the construction for which the complainant contends, it is quite probable that a large majority of the titles in this state would rest in adverse possession. The purpose of the term 'adverse pos-

session' in the contract was not, in my judgment, to afford an excuse for non-performance but rather to insure the vendee a good title not subject to successful attack in the courts. The defendant is unquestionably in a position to convey such a title. The contract does not require a complete record title back to the proprietors, and if such had been required by the complainant provision therefore could have been made in the contract. In view of the conclusions hereinabove expressed it does not appear necessary to further discuss any of the points raised by the opposing briefs. I will advise a decree dismissing the bill of complaint, with costs."

*Messrs. Corn & Silverman,* for the appellant.

*Messrs. Hood, Lafferty & Campbell,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Berry.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.